Zein E. Obagi, Jr. (State Bar No. 264139)
  *zo@obagilaw.com*
Hee J. Kim, *Of Counsel* (State Bar No. 275010)
  *hk@obagilaw.com*
**OBAGI LAW GROUP, P.C.**
811 Wilshire Boulevard, Suite 1721
Los Angeles, CA 90017
Telephone: (424) 284-2401

Attorneys for Plaintiff
TUNJI ADEYEMI

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CA – EASTERN DIVISION

| | |
|---|---|
| TUNJI ADEYEMI, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>MERICK B. GARLAND, in his official capacity as Attorney General Department of Justice,<br><br>    Defendant. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>1. **RACIAL DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000(e)**<br><br>2. **DISCRIMINATION BASED ON SKIN COLOR IN VIOLATION OF 4 2 U.S.C. § 2000(e)**<br><br>3. **HARASSMENT AND HOSTILE WORK ENVIRONMENT BASED ON RACE AND SKIN COLOR IN VIOLATION OF 42 U.S.C. § 2000(e)**<br><br>4. **RETALIATION IN VIOLATION OF 42 U.S.C. § 2000(e)**<br><br>5. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>6. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Tunji Adeyemi hereby alleges as follows:

## I.    NATURE OF ACTION

1.    This employment actions arises out of the unlawful activities to which Plaintiff Tunji Adeyemi, an African American male, has been subject to during his employment at the Federal Correctional Complex in Victorville, California ("FCC Victorville"), including Defendant's discrimination and harassment of Plaintiff on the basis of his race, and subsequent retaliation for contacting the Equal Employment Opportunity Commission.

2.    Mr. Adeyemi, as a Senior Correctional Officer who provides supervision, care and correctional treatment of inmates has been denied the opportunity to fully perform his job duties, denied training opportunities, and denied further career advancement within the organization.

3.    Indeed, despite outstanding performance, he has been demoted, humiliated by an escorted walk-off the Federal Corrective Institution I, Victorville ("FCI I") and told to report off-site from the facility to work.

## II.    PARTIES

4.    Plaintiff **Tunji Adeyemi,** an African American male, is, and at all relevant times was, an individual residing in the State of California.

5.    Defendant **Merick B. Garland** is the Attorney General and executive of the United States Department of Justice – Bureau of Prisons.

6.    Non-Party **Department of Justice** is a department of the federal government of the United States of America, operating the **Federal Bureau of Prisons** (hereinafter "BOP"), and specifically, FCC Victorville, which houses a penitentiary and correctional facilities located at 13777 Air Expressway Boulevard, Victorville, California, on federally owned and operated land in the County of San Bernardino, State of California.

7.    At all times herein mentioned, Defendant was an agents and/or employee of each of the BOP and Department of Justice, and in doing the things

hereinafter alleged, was acting within the course and scope of his agency and/or employment.

### III.   JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

9.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) and 42 U.S.C. § 2000(e)-5(f), because the BOP is a federal agency, and many of the acts and omissions giving rise to this action occurred in this judicial district.

### IV.   ADMINISTRATIVE PREREQUISITES SATISFIED

10.    Plaintiff timely initiated EEO counseling with regarding to the complaints that are the subject of his discrimination charge of January 4, 2021, on **November 12, 2020**.  Due to the passing of EEO Specialist Jose Bautista, the agency granted Mr. Adeyemi an extension.

11.    In response, Plaintiff was given a Notice of Right to File a Discrimination Complaint by Equal Employment Opportunity Counselor B.M. Beard.

12.    Plaintiff timely filed a charge of discrimination against Defendant Federal Bureau of Prisons with the Equal Employment Opportunity Commission (EEOC) on January 4, 2021, which he amended on January 28, 2021.

13.    A final agency decision has not been rendered.

14.    However, as specified under 29 C.F.R. § 1614.407(b), more than 180 days have passed since Plaintiff filed his formal administrative complaint of discrimination with the EEOC.

15.    Plaintiff has complied with the statutory prerequisites for maintaining this civil action as set forth in Title VII and the regulations issued thereunder.

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

## V.    **GENERAL ALLEGATIONS**

**A.    Mr. Adeyemi's employment at FCC Victorville**

16.    Mr. Adeyemi started his employment at FCC Victorville on or about May 31, 2015 as a Correctional Officer.

17.    On or about June 1, 2016, Mr. Adeyemi began his role as a Senior Correctional Officer FCC Victorville.

18.    A Senior Correction Officer provides supervision, care, and correctional treatment of inmates.  This includes positively contributing to health and welfare of the federal inmates.  Further, the duties include enforcement of rules and regulations governing facility security, inmate accountability, and inmate conduct to ensure judicial sanctions are carried out and inmates remained in custody.

19.    On or about March 1, 2020, Mr. Adeyemi began his role as a Material Handler Supervisor.

20.    Under the role of a Materials Handler Supervisor, Mr. Adeyemi was responsible for work on a rotational basis, that included warehouse, commissary and clothing issue/laundry operations at FCC Victorville.

21.    Adeyemi also supervised inmate workers responsible for receiving, storing and shipment of a wide variety of supplies, materials, and equipment required for the operation of the facility.  In that role, Mr. Adeyemi was responsible for inventory control.

22.    Correctional Officers and Material Handler Supervisors are considered Federal Law Enforcement Officers and can be authorized to carry firearms and to use physical force to maintain control of inmates.  Mr. Adeyemi was authorized to carry a firearm.

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

**B.**     **Attempts were made to hinder Mr. Adeyemi's career growth and advancement while at FCC Victorville**

23.     While employed at FCC Victorville, Mr. Adeyemi attempted to advance his career within the organization.  He applied to over a dozen positions for which, upon information and belief, he was a qualified candidate.

24.     It was Mr. Adeyemi's experience, that as part of FCC Victorville's hiring processes, it conducted a reference check.  As part of a reference check, FCC Victorville inquired as to any disciplinary history by a potential candidate.

25.     Mr. Adeyemi learned that his Caucasian supervisors, such as **Captain Robert Hodak**, have provided misleading reference checks about Mr. Adeyemi where he stated that it was "unknown" whether Mr. Adeyemi had any disciplinary actions.

26.     This misleading reference check damaged and reduced Adeyemi's opportunities for professional advancement.

27.     Upon information and belief, any of his supervisors should have direct knowledge of the fact, or had the ability and means to appropriately ascertain whether Mr. Adeyemi actually had any disciplinary actions in his record.  Mr. Adeyemi's supervisors could have checked FCC Victorville's system to confirm a simple "yes" or "no" answer, rather than leave the important issue ambiguous.

28.     Upon information and belief, any answer that is not "no" to a disciplinary action question can be detrimental to the career growth of any individual at FCC Victorville, and much more for an African American employee.

29.     On further information and belief, supervisors did not leave responses on the disciplinary history questions of other Caucasian correctional officers similarly ambiguous.  The ambiguity on the response on Mr. Adeyemi's reference checks was a discrete way of systemically discriminating in the professional advancement of Black and African American correctional officers.

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

30.     The disparate impact of these practice is objectively observable. On information and belief, Black and African American male correctional officers are promoted less and paid less than their Caucasian and Hispanic counterparts.

**C.     Mr. Adeyemi's Caucasian counterparts were often offered promotions**

31.     While Mr. Adeyemi applied for over a dozen positions for which he is informed and believes he was qualified, Defendant did not offer him any of those positions.

32.     Yet, BOP consistently promoted his lesser or equally qualified Caucasian counterparts.

33.     Several of Mr. Adeyemi's colleagues obtained more than one promotion in a given year, while he obtained none over years of service.

**D.     Mr. Adeyemi's faced racial hostility by his colleagues**

34.     On or about June 2020, Mr. Adeyemi began facing a verbally abusive, hostile work environment from his coworker Raymond Bar, a Caucasian male.

35.     Barr often went against what Mr. Adeyemi believed were best practices for the job, and said things along the words of: "You are so fucking annoying man" and "Nobody here fucking likes Adeyemi.  You guys watch, I'm going to make sure Trust Fund Supervisor Montoya removes Adeyemi and make sure he fails his probation period."

36.     Barr, was assigned to commissary in "C-Range" and Adeyemi was assigned to "A-Range."  When certain Special Housing Unit inmates were allowed to purchase tartar protection toothpaste, Barr maliciously used a black permanent maker to conceal toothpaste and other items from the "A-Range" commissary list, simply to harass Mr. Adeyemi.  This inappropriate conduct also hurt the inmate population, many of which are minorities.

37.     On or about June 15, 2020, when an African American inmate requested to purchase undergarment clothing, Mr. Adeyemi's Caucasian colleague, Raymond Barr, asked Mr. Adeyemi what the inmate's name was.  Mr. Adeyemi

OBAGI LAW GROUP, P.C.
— ATTORNEYS AT LAW —

responded that he did not know, but noted the inmate's characteristics.  Barr laughed and sarcastically stated words to the effect of "I guess black people can get whatever they want this week."

38.    Around that time, Mr. Adeyemi also expressed a desire to hire an African American inmate.  Barr did not want to allow Mr. Adeyemi to hire the African American inmate.  This issue took place throughout a couple of weeks.

39.    On June 19, 2020, Mr. Adeyemi informed human resources that Barr actively made insensitive comments towards African American inmates, which offended him as an African American male, and hindered Mr. Adeyemi from hiring minority inmate workers.

40.    BOP took no action in response to Adeyemi's complaint regarding Barr's racially hostile comments.  While the African American inmate whom Mr. Adeyemi sought to hire was eventually hired by BOP, within weeks Barr fired him for no cause at all, further elevating the hostility to African Americans within BOP that Adeyemi perceived.

41.    Mr. Adeyemi was treated disparately in other circumstances too.  Correction officers, including Mr. Adeyemi, are often required to wear stab resistant vests.  They interact with some of the most dangerous and resourceful inmates in the world.

42.    Stab resistant and other vests have a limited shelf and use life of about five years, because some of the chemical components like Kevlar or other composites and fibers can degrade over time.  After the expiration period, an expired vest does not protect its user in the manner intended.

43.    The person charged with providing correctional officers, including Mr. Adeyemi, with protective equipment is the Emergency Preparation Officer.  In July 2018, **Derek Eber**, a Caucasian male, filled that role.

44.     On or about July 2020, Mr. Adeyemi provided by Eber an expired stab resistant vest.    Mr. Adeyemi realized the vest was expired because it was manufactured in July 2015.    The vest was a Survival Armor SKS-3, with the label pictured below:



45.     Survival Armor SKS-3 vests are made of Aramid materials, or aromatic polyamide.  These materials are a class of heat-resistant and strong, woven synthetic fibers.  But, as noted above, fibers in woven fabric start to separate, reducing the ballistic protection provided by the vest over time and, on information and belief, cease to be National Institute of Justice (NIJ) certified after that time.

46.     Mr. Adeyemi attempted to schedule several meetings with Defendant **Warden Martinez** about these incidents**.**  But, Warden Martinez cancelled their meetings several times and Mr. Adayemi was never able to discuss the ongoing racial hostility he was experiencing with the highest-ranking official on the premises.

47.     Every time he doned his SK-3, Mr. Adeyemi felt compromised, and fearful for his life since he knew that an expired stab-resistant vest could prove ineffective at the most critical time of need.

**E.      A random driver shot at Mr. Adeyemi while he was off-duty, and FCC Victorville turns Adeyemi from a victim to a suspect, using the incident as a basis to further harass, discriminate and retaliate against him**

48.     On or about August 16, 2020, while driving on the highway, an individual began to shoot at Adeyemi and then tailgated and followed Adeyemi. Mr. Adeyemi called 9-1-1 and met up with San Bernardino County Sheriff's Deparment.

49.     On the next day, August 17, 2020, Mr. Adeyemi, as a Senior Correctional Officer, reported the off-duty incident to Joel Montiel (Trust Fund Supervisor), Warden Martinez and Charles Alvarez (Special Investigative Agent), as required by Agency policy.

50.     On or about August 18, 2020, Mr. Adeyemi was asked to attend a meeting with Warden Martinez to discuss the incident.  At that meeting, Warden Martinez indicated that, because Mr. Adeyemi had not been charged with any crime, he would not be placed on administrative leave or experience any duty modifications.

51.     But, on or about September 4, 2020, Mr. Adeyemi was placed on restrictive duty status, and his workspace was relocated from the prison to the Central Administrative Building ("CAB").  Until that time, Mr. Adeyemi had worked overtime during every pay period.

52.     While at the CAB, Mr. Adeyemi's daily duties were drastically reduced and Warden Martinez denied Mr. Adeyemi the right to work any overtime.

53.     Further, Mr. Adeyemi's Basic Prison Transport ("BST) status was rescinded.  A BST status allowed Mr. Adeyemi to transport inmates within FCC

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

Victorville. The rescission of that status further reduced his responsibilities and privileges of employment.

54.     On or about September 4, 2020, Mr. Adeyemi learned that Warden Martinez divulged private, confidential, information to FCC Victorville staff members related to the August 16th attack on him.

55.     Mr. Adeyemi was approached by other staff members who informed him that even inmates were aware about the August 16th attack on him.  Mr. Adeyemi did not divulge information about the incident to any of his colleagues, and much less any of the inmates.

56.     That same morning, on **September 4, 2020** at about 10:30 am, **Captain Ortega** went to Mr. Adeyemi's work location and informed him that he needed to stop work, and personally escorted Mr. Adeyemi out of the FCI I Victorville premises.

57.     Not only was the "walk out" performed in front of Mr. Adeyemi's colleagues, but also in front of the inmates located in the B-Upper housing unit.  Mr. Adeyemi was walked through the FCI compound in view of the compound staff, education staff, control room officers and the front lobby officers.

58.     This event humiliated Mr. Adeyemi, and would sear into the minds of inmates should he ever return since it was such a rare occurrence, saved for the worst offending staff members who posed threats to prison security or human safety.

59.     On information and belief, Captain Ortega's actions walking Mr. Adeyemi out violated the Master Agreement between Federal Bureau of Prisons and Council of Prison Locals 33, Article 6 (Rights of the Employee), Section n, which states:

> There are occasions when it is necessary for the Employer to remove employees from their work site or facility for safety or security reasons. When such an escorted departure is necessary, efforts will be made wherever possible to ensure that such actions are handled in a discrete manner.

60.     At the time he was escorted, Mr. Adeyemi was neither charged with nor suspected of violating any law or prison policy, let alone correctional officer protocol.

61.     In fact, Mr. Adeyemi was made aware of various staff members who were suspected of and or charged with serious crimes, such as driving under the influence and domestic abuse, rape, selling firearms to felons and other security breaches.  Yet, on information and belief, none of those non-black non-African American staffers were ever escorted off the FCC Victorville premises in front of staff and inmates.  It is because leadership at FCC Victorville consistently and systemically treats Black or African American correctional officers with discriminatory animus that Mr. Adeyemi was escorted off the premises as he was.

62.     In fact, not only have Caucasian employees who have been arrested numerous times and committed many crimes not been escorted out of the premises, upon information and belief, they never had their jobs modified in any respect.

63.     Upon further information and belief, Mr. Adeyemi has been made aware of situations where senior management at FCC Victorville have attempted to obtain a lesser charge for a Caucasian employee in order to maintain that employee's employment at the prison active and without change.

64.     On September 15, 2020, Warden Martinez emailed Mr. Adeyemi to apologize for Captain Ortega's conduct.  But, upon information and belief, Warden Martinez took no corrective actions against Captain Ortega, and thereby condoned the disparate, racist treatment of Black correctional officers.  In fact, Captain Ortega did not personally apologize to Mr. Adeyemi or do anything to acknowledge his improper conduct.

65.     FCC Victorville provides an annual cardiopulmonary resuscitation and firearm training.  On **September 29, 2020**, Warden Martinez denied Mr. Adeyemi the opportunity to participate in the 2020 training due to the off-duty incident that he had reported on August 16, 2020.

OBAGI LAW GROUP, P.C.

ATTORNEYS AT LAW

66.     Yet, Warden Martinez allowed another Caucasian employee, Richard Sotela, to participate in the training even though, upon information and belief, the agency was aware that Sotela was arrested and **charged** with illegal transfer of firearms, prohibited acquisition and transfer of firearms and conspiracy to commit a crime. Further, Robert Gaines, who upon information and belief, the agency was aware was arrested and **charged** with exhibiting a deadly weapon and unlawfully carrying a concealed weapon, was also allowed to partcipate.

67.     Mr. Adeyemi, ultimately, contacted the EEOC to request counseling and formally file a complaint.

68.     On or about November 17, 2020, after Mr. Adeyemi contacted the EEOC, Associate Warden John Williams informed Mr. Adeyemi that he could not return to normal duty due to the August 16th, 2020 off-duty incident.  Mr. Adeyemi provided Associate Warden Williams with documentation that stated that there would be no charges against Mr. Adeyemi.   Nonetheless, Mr. Adeyemi was informed that he still would not be allowed to return to his normal work duties.

69.     On or about November 19, 2020, Mr. Adeyemi continued to suffer racial harassment and discrimination when **Special Investigative Agent (SIA) Alvarez** yelled and belittled Mr. Adeyemi in front of other staff.

70.     Mr. Adeyemi had approached **SIA Alvarez** in the hallway to relay that he wanted to discuss with him that he learned that his Caucasian counterparts were allowed to participate in trainings without work modifications even though they had been arrested or charges had been brought against them.  SIA Alvarez did not want to discuss the issue, and in front of the human resources staff, yelled at and berated Mr. Adeyemi.

71.     On January 26, 2021, FCC Victorville management subjected Mr. Adeyemi to additional retaliation when his access to the staff roster was disabled. This denied him the opportunity to schedule or sign up for certain work shifts.  As of the filing of this complaint, Mr. Adeyemi's access has not been reinstated.

# VI.   CLAIMS PRESENTED

## A.   FIRST CAUSE OF ACTION FOR RACIAL DISCRIMINATION

### *(Adeyemi v. Garland)*

72.   Plaintiff hereby realleges and incorporates all of the preceding allegations in this complaint as though they were set forth here.

73.   This cause of action is brought pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*., as amended.

74.   At all times mentioned herein, Defendant employed 15 or more persons.

75.   Plaintiff is an African American male.

76.   The Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*., as amended, prohibits an employer from discriminating against an employee because of the employee's race.

77.   Throughout his employment at BOP and FCC Victorville, Plaintiff was subjected to racial disparate treatment and harassment by his colleagues and supervisors, including but not limited to the following ways:

    a. His superiors provided misleading reference checks upon his applying for different positions within FCC Victorville so that he would systematically be denied promotion;

    b. Denial of the opportunity to advance and grow within the organization after applying to over a dozen different positions, particularly when Plaintiff's equally or lesser-qualified Caucasian counterparts were often granted promotions;

    c. Providing Plaintiff with an expired or expiring stab resistant vest, and requiring him to wear it in lieu of a non-expired one;

    d. Demoting Plaintiff by restricting his job duties, denying him the right to work overtime and relocating his assignment to less desirable locations;

*OBAGI LAW GROUP, P.C.*
*ATTORNEYS AT LAW*

e.  Denying Plaintiff the opportunity to attend relevant trainings for his position as a Federal Law Enforcement Officer;

f.  Disseminating his private information to others, including inmates;

g.  Escorting Plaintiff from FCI I premises in a visible manner in front of other staff and inmates, when his Caucasian counterparts never faced similar treatment based on being the victim of a crime;

h.  Yelling at and belittling Plaintiff in front of other employees; and

i.  Not taking corrective action when Plaintiff reported insensitive comments made against him or African Americans.

78.    The unlawful conduct, as alleged above, was motivated by Defendant's animus to Plaintiff's race.

79.    Plaintiff's race was a determining factor in the conduct, actions, and instigations by Defendant.

80.    Defendant's conduct was a substantial factor in causing damage or injury to Plaintiff.

81.    As a legal, direct, and proximate result of Defendant's conduct, as alleged herein, Plaintiff suffered and continues to suffer economic loss and damages, humiliation, embarrassment, and mental anguish, all to his damage, pursuant to Title VII, as amended by the Civil Rights Act of 1991, and 42 U.S.C. § 1981, in an amount to be established by proof at trial.

82.    Defendant's conduct, as described herein, was done with malice and oppression and with a conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff.  By reason thereof, Plaintiff is entitled to punitive damages, as permissible by law, according to proof at trial.

83.    Plaintiff is further entitled to recover his reasonable attorney's fees and costs of suit pursuant to 42 U.S.C. §§ 1988, 2000e-5(k).

*Adeyemi v. Garland*

-14-

**COMPLAINT**

OBAGI LAW GROUP, P.C.

ATTORNEYS AT LAW

**B.**     **SECOND CAUSE OF ACTION FOR DISCRIMINATION BASED ON COLOR**

*(Adeyemi v. Garland)*

84.     Plaintiff hereby realleges and incorporates all of the preceding allegations in this complaint as though they were set forth here.

85.     This cause of action is brought pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, as amended.

86.     At all times mentioned herein, Defendant employed 15 or more persons.

87.     Plaintiff is a Black male.

88.     The Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, as amended, prohibits an employer from discriminating against an employee because of the employee's race.

89.     Throughout his employment at BOP and FCC Victorville, Plaintiff was subjected to disparate treatment and harassment by his colleagues and supervisors based on the color of his skin, including but not limited to the following ways:

    a. His superiors provided misleading reference checks upon his applying for different positions within FCC Victorville so that he would systematically be denied promotion;

    b. Denial of the opportunity to advance and grow within the organization after applying to over a dozen different positions, particularly when Plaintiff's Caucasian equally or lesser-qualified counterparts were often granted promotions;

    c. Providing Plaintiff with an expired or expiring stab resistant vest, and requiring him to wear it in lieu of a non-expired one;

    d. Demoting Plaintiff by restricting his job duties, denying him the right to work overtime and relocating his assignment to less desirable locations;

*Adeyemi v. Garland*                                    -15-
**COMPLAINT**

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

e.   Denying Plaintiff the opportunity to attend relevant trainings for his position as a Federal Law Enforcement Officer;

f.   Disseminating his private information to others, including inmates;

g.   Escorting Plaintiff from FCC I Victorville premises in a visible manner in front of other staff and inmates, when his Caucasian counterparts never faced similar treatment based on being the victim of a crime;

h.   Yelling at and belittling Plaintiff in front of other employees; and

i.   Not taking corrective action when Plaintiff reported insensitive comments made against him or African Americans.

90.   The unlawful conduct, as alleged above, was motivated by Defendant's animus to Plaintiff's skin color.

91.   Plaintiff's skin color was a determining factor in the conduct, actions, and instigations by Defendant.

92.   Defendant's conduct was a substantial factor in causing damage or injury to Plaintiff.

93.   As a legal, direct, and proximate result of Defendant's conduct, as alleged herein, Plaintiff suffered and continues to suffer economic loss and damages, humiliation, embarrassment, and mental anguish, all to his damage, pursuant to Title VII, as amended by the Civil Rights Act of 1991, and 42 U.S.C. §1981, in an amount to be established by proof at trial.

94.   Defendant's conduct, as described herein, was done with malice and oppression and with a conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff.  By reason thereof, Plaintiff is entitled to punitive damages, as permissible by law, according to proof at trial.

95.   Plaintiff is further entitled to recover his reasonable attorney's fees and costs of suit pursuant to 42 U.S.C. §§ 1988, 2000e-5(k).

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

**C.      THIRD CAUSE OF ACTION FOR HOSTILE WORK ENVIRONMENT**

*(Adeyemi v. Garland)*

96.      Plaintiff hereby realleges and incorporates all of the preceding allegations in this complaint as though they were set forth here.

97.      This cause of action is brought pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*., as amended.

98.      At all times mentioned herein, Defendant employed 15 or more persons.

99.      Plaintiff is an African American and Black male.

100.    Throughout his employment at BOP and FCC Victorville, Plaintiff was subjected to unwanted harassing conduct and a hostile work environment by his colleagues and supervisors, because of his skin color and race, including but not limited to the following ways:

> a. His superiors provided misleading reference checks upon his applying for different positions within FCC Victorville so that he would systematically be denied promotion;

> b. Denial of the opportunity to advance and grow within the organization after applying to over a dozen different positions, particularly when Plaintiff's Caucasian equally or lesser-qualified counterparts were often granted promotions;

> c. Providing Plaintiff with an expired or expiring stab resistant vest, and requiring him to wear it in lieu of a non-expired one;

> d. Demoting Plaintiff by restricting his job duties, denying him the right to work overtime and relocating his assignment to less desirable locations;

> e. Denying Plaintiff the opportunity to attend relevant trainings for his position as a Federal Law Enforcement Officer;

f.  Disseminating his private information to others, including inmates;

g.  Escorting Plaintiff from FCI I Victorville premises in a visible manner in front of other staff and inmates, when his Caucasian counterparts never faced similar treatment based on being the victim of a crime;

h.  Yelling at and belittling Plaintiff in front of other employees; and

i.  Not taking corrective action when Plaintiff reported insensitive comments made against him or African Americans.

101.  The unlawful conduct, as alleged above, was motivated by Defendant's hostility to Plaintiff's race and skin color.

102.  Plaintiff's race and skin color were a determining factor in the conduct, actions, and instigations by Defendant.  Thus, Defendant's conduct was a substantial factor in causing damage or injury to Plaintiff.

103.  As a legal, direct, and proximate result of Defendant's conduct, as alleged herein, Plaintiff suffered and continues to suffer economic loss and damages, humiliation, embarrassment, and mental anguish, all to his damage, pursuant to Title VII, as amended by the Civil Rights Act of 1991, and 42 U.S.C. §1981, in an amount to be established by proof at trial.

104.  Defendant's conduct, as described herein, was done with malice and oppression and with a conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff.  By reason thereof, Plaintiff is entitled to punitive damages, as permissible by law, according to proof at trial.

105.  Plaintiff is further entitled to recover his reasonable attorney's fees and costs of suit pursuant to 42 U.S.C. §§ 1988, 2000e-5(k).

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

## D. FOURTH CAUSE OF ACTION FOR RETALIATION FOR COMPLAINTS OF RACE DISCRIMINATION AND HARASSMENT

### *(Adeyemi v. Garland)*

106. Plaintiff hereby realleges and incorporates all of the preceding allegations in this complaint as though they were set forth here.

107. This cause of action is brought pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*., as amended.

108. Plaintiff is an African American male.

109. At all times mentioned herein, Defendant employed 15 or more persons, discriminated and harassed Plaintiff on the basis of his race and retaliated against him for filing claims to protect his rights in violation of Federal law, particularly after he made a complaint to the EEOC.

110. Plaintiff filed grievances with the EEOC that he had been discriminated, harassed, and retaliated because of his race, including by:

    a. Providing misleading reference checks upon applying for different positions within FCC Victorville;

    b. Denying Plaintiff the opportunity to advance and grow within the organization after applying to over one dozen different positions, particularly when Plaintiff's Caucasian counterparts were often granted promotions;

    c. Providing Plaintiff with an expired stab resistant vest;

    d. Demoting Plaintiff by restricting his job duties;

    e. Denying Plaintiff the opportunity to attend relevant trainings for his position as a Federal Law Enforcement Officer;

    f. Escorting Plaintiff from the premises in a visible manner in front of other staff and inmates, particularly when the situation did not call for such;

    g. Yelling and belittling Plaintiff in front of other employees; and

OBAGI LAW GROUP, P.C.
ATTORNEYS AT LAW

111.   Defendant did not take corrective action as it pertained to any of the complaints Plaintiff lodged whether to a supervisor, or the EEOC.

112.   Plaintiff's race was a determining factor in the conduct, actions, and instigations by Defendant.  Thus, Defendant's conduct was a substantial factor in causing damage or injury to Plaintiff.

113.   As a legal, direct, and proximate result of Defendant's conduct, as alleged herein, Plaintiff suffered and continues to suffer economic loss and damages, humiliation, embarrassment, and mental anguish, all to his damage, pursuant to Title VII, as amended by the Civil Rights Act of 1991, and 42 U.S.C. §1981, in an amount to be established by proof at trial.

114.   Defendant's conduct, as described herein, was done with malice and oppression and with a conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff.  By reason thereof, Plaintiff is entitled to punitive damages, as permissible by law, according to proof at trial.

115.   Plaintiff is further entitled to recover his reasonable attorney's fees and costs of suit pursuant to 42 U.S.C. §§ 1988, 2000e-5(k).

## E.   FIFTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### *(Adeyemi v. Garland)*

116.   Plaintiff hereby realleges and incorporates all of the preceding allegations in this complaint as though they were set forth here.

117.   This cause of action is brought pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*., as amended.

118.   Defendant had a duty towards Plaintiff to treat him in a reasonable manner as an employee to ensure that he was not subjected to discrimination, harassment, or retaliation in the workplace.

119.   Defendant's actions as described herein breached Defendant's duty to Plaintiff to ensure that he was not subjected to discrimination, harassment, or

retaliation in the workplace.  The conduct, ratified by Defendant, was extreme and outrageous, especially considering Warden Martinez and Captain Ortega's supervisory position of power.

120.    By the conduct alleged above, which is prohibited under Title VII, Defendant, and its supervisors, agents, or officers, acted outrageously, with the intention to cause, or with reckless disregard of the probability of causing Plaintiff to suffer severe emotional distress.  This conduct actually and proximately caused Plaintiff severe emotional distress.

121.    Defendant, and each of them, as alleged above, harmed Plaintiff because those actions caused him to suffer humiliation, mental anguish, and emotional and physical distress.  As a result of such unlawful conduct and consequent harm, Plaintiff suffered damages in an amount to be proven at trial.

## F.    SIXTH CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

*(Adeyemi v. Garland)*

122.    Plaintiff hereby realleges and incorporates all of the preceding allegations in this complaint as though they were set forth here.

123.    This cause of action is brought pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, as amended.

124.    Defendant had a duty towards Plaintiff to treat him in a reasonable manner as an employee to ensure that he was not subjected to discrimination, harassment, or retaliation in the workplace.

125.    Defendant's actions as described herein breached Defendant's duty to Plaintiff to ensure that he was not subjected to discrimination, harassment, or retaliation in the workplace.  The conduct, ratified by Defendant, was extreme and outrageous, especially considering Warden Martinez and Captain Ortega's supervisory position of power.

126.   By the conduct alleged above, which is prohibited under Title VII, Defendant, and its supervisors, agents, or officers, acted negligently, and with reasonable foreseeability that their conduct would cause Plaintiff to suffer emotional distress.   This conduct actually and proximately caused Plaintiff severe emotional distress.

127.   Defendant, and each of them, as alleged above, harmed Plaintiff because those actions caused him to suffer humiliation, mental anguish, and emotional and physical distress.   As a result of such unlawful conduct and consequent harm, Plaintiff suffered damages in an amount to be proven at trial.

## VII.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Tunji Adeyemi prays that judgment be entered in his favor and against Defendant, as follows:

1.   For general, special, and incidental damages, according to proof at trial;

2.   For exemplary damages according to proof at trial;

3.   For statutory penalties and damages as applicable;

4.   For statutory attorney's fees herein incurred;

5.   For an award of costs;

6.   For an award of prejudgment interest on sums certain and lost wages;

7.   For the court's declaration stating Defendant violated Mr. Adeyemi's statutory rights;

8.   For injunctive relief enjoining Defendant from engaging in discriminatory conduct against any other employee based on their race or skin color, and enjoining Defendant from engaging in any unlawful conduct of the type described herein or proven at trial; and

9.   For such other and further relief as the Court may find appropriate and just.

1

Dated: December 17, 2021

**OBAGI LAW GROUP, P.C.**

2

**/s/ Zein E. Obagi, Jr.**

3

By:_____

4

Zein E. Obagi, Jr.
Hee J. Kim, Of Counsel

5

Attorneys for Plaintiff
TUNJI ADEYEMI

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Adeyemi v. Garland*

-23-

**COMPLAINT**